UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHERI G.,

                        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

                        Defendant.

Case No. C20-6139-SKV

ORDER REVERSING THE
COMMISSIONER'S DECISION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

BACKGROUND

Plaintiff was born in 1966, has a high school diploma and additional cosmetology training, and previously worked as a high school teacher's aide.  AR 42-43, 255.  Plaintiff was last gainfully employed in January 2015.  AR 256.

In February 2018, Plaintiff applied for benefits, alleging disability as of January 3, 2015.[1]

---

[1] At the administrative hearing, Plaintiff amended her alleged onset date to December 1, 2017.  AR 38-39.

AR 227-28.  Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing.  AR 136-42, 144-52.  After the ALJ conducted a hearing in December 2019 (AR 34-66), the ALJ issued a decision finding Plaintiff not disabled.  AR 15-27.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one**:  Plaintiff has not engaged in substantial gainful activity since the amended alleged onset date.

**Step two**:  Plaintiff has the following severe impairments: cervical degenerative disc disease with radiculopathy; lumbar degenerative disc disease; carpal tunnel syndrome, right, status post injection; headaches; other specified trauma- and stressor-related disorder; and avoidant personality disorder.

**Step three**:  These impairments do not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity**:  Plaintiff can perform light work with additional limitations: she can occasionally climb, and frequently balance and stoop.  She can occasionally push, pull, and reach with her right non-dominant arm.  She can occasionally handle and finger with the right non-dominant hand.  She can have occasional exposure to extreme cold, noise, and hazards, such as unprotected heights and dangerous machinery, and she can have occasional exposure to fumes, odors, dusts, gases, and poor ventilation.  She can have occasional superficial interaction with the public, co-workers, and supervisors.

**Step four**:  Plaintiff cannot perform past relevant work.

**Step five**:  As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR 15-27.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  AR 1-6.  Plaintiff appealed the final decision of the Commissioner to this Court.  Dkt. 1.

---

[2] 20 C.F.R. § 404.1520.
[3] 20 C.F.R. Part 404, Subpart P, App. 1.

1

**LEGAL STANDARDS**

2   Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social

3   security benefits when the ALJ's findings are based on harmful legal error or not supported by

4   substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir.

5   2005).  As a general principle, an ALJ's error may be deemed harmless where it is

6   "inconsequential to the ultimate nondisability determination."  *Molina v. Astrue*, 674 F.3d 1104,

7   1115 (9th Cir. 2012) (cited sources omitted).  The Court looks to "the record as a whole to

8   determine whether the error alters the outcome of the case." *Id.*

9   Substantial evidence is "more than a mere scintilla.  It means - and means only - such

10   relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

11   *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (cleaned up); *Magallanes v. Bowen*, 881 F.2d

12   747, 750 (9th Cir. 1989).  The ALJ is responsible for evaluating symptom testimony, resolving

13   conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v.*

14   *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record

15   as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the

16   Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

17   susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

18   must be upheld.  *Id.*

19

**DISCUSSION**

20   Plaintiff argues that the ALJ erred by finding no severe foot impairments at step two, and

21   in assessing certain medical opinions.  The Commissioner argues the ALJ's decision is free of

22   harmful legal error, supported by substantial evidence, and should be affirmed.

23

ORDER REVERSING THE COMMISSIONER'S
DECISION - 3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

**A.     The ALJ Erred at Step Two**

At step two, the ALJ explained that he found Plaintiff's plantar fasciitis to be a non-severe impairment because it caused only a minimal limitation in her ability to perform basic work activities and her primary care provider noted no significant concerns related to this condition.  AR 18 (citing AR 997).  Plaintiff argues that plantar fasciitis is not her only foot condition: her podiatrist noted that she had complications related to a prior foot surgery after she stepped on a rock in August 2018, as well as degenerative disease in her great toes.  Dkt. 10 at 7 (citing AR 698-99, 860-66, 912, 932, 935-39, 987).  Plaintiff contends that the ALJ failed to account for the entire record when finding that she had no severe impairment related to her feet.

*1.     Legal Standards*

At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities.  *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987); 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1522(b), 416.922(b).  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling ("SSR") 85-28).  "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* (citing *Bowen*, 482 U.S. at 153-54).  An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity.  *Id.*  A diagnosis alone is not sufficient to establish a severe impairment. Instead, a claimant must show his medically determinable impairments are severe.  20 C.F.R. §§ 404.1521, 416.921.

1

2.      *The ALJ's Step-Two Error is Harmful*

2

      Plaintiff has identified evidence pertaining to her foot impairment that the ALJ did not

3

address in finding at step two that she did not have a severe foot impairment, and Plaintiff also

4

showed that the ALJ relied in part on evidence that pre-dates the August 2018 exacerbation of

5

Plaintiff's foot problems in finding that she did not have significant functional foot-related

6

limitations.  *See* AR 698-99, 860-66, 912, 932, 935-39, 987.

7

      The Commissioner emphasizes that Plaintiff did not claim to have a disabling foot

8

impairment when she applied for benefits in February 2018 (Dkt. 12 at 3), but this argument fails

9

to acknowledge that Plaintiff's foot condition did not flare until August 2018, when she stepped

10

on a rock.  *See* AR 860.  The Commissioner (like the ALJ) relies on Plaintiff's primary care

11

physician's lack of concern about her plantar fasciitis (Dkt. 12 at 4 (citing AR 997)), but the ALJ

12

did not acknowledge that Plaintiff's podiatrist diagnosed status post bunionectomy with pain on

13

the right side and "discussed surgical options at length" with Plaintiff.  *See* AR 864-66.  In

14

October 2019, the podiatrist indicated that Plaintiff's foot problems caused extreme pain and

15

swelling that limited her to 15-60 minutes of standing/walking.  AR 932.

16

      The evidence not discussed by the ALJ suggests that Plaintiff's foot problems caused

17

significant limitations in her ability to perform basic work activities such as standing and

18

walking, and although there may be valid reasons to discount that evidence, the ALJ did not

19

provide any reason to do so at either step two or later in the decision.  In his summary of

20

Plaintiff's allegations, the ALJ focused on the symptoms and limitations Plaintiff described in

21

her agency paperwork completed in March 2018 (AR 20-21), before the flare of her foot

22

problems later that year, and did not acknowledge that at the administrative hearing, Plaintiff

23

testified that her foot problems were a primary problem.  *See* AR 46-47.

1      Thus, in light of the ALJ's failure to account for all of the evidence related to Plaintiff's

2    foot problems at step two or in subsequent steps of the decision, the Court finds that the ALJ's

3    step-two error is harmful and the foot-related evidence must be reconsidered on remand at step

4    two and at subsequent steps in the decision as necessary.

5        **B.**      **The ALJ Erred in Assessing Certain Medical Opinion Evidence**

6      Plaintiff argues that the ALJ erred in assessing opinions written by treating podiatrist Huy

7    Yang, DPM; and consultative examiner Benjamin Wolpaw, M.D.  The Court will address each

8    disputed opinion in turn.

9        *1.*     *Legal Standards*

10      In assessing Plaintiff's 2018 application for benefits, the ALJ is required to articulate the

11   persuasiveness of each medical opinion, specifically with respect to whether the opinions are

12   supported by and consistent with the record. 20 C.F.R. §§ 404.1520c(a)-(c) 416.920c(a)-(c).

13      The Commissioner argues that the regulations promulgated in 2017 changed the legal

14   standards previously articulated by the United States Court of Appeals for the Ninth Circuit.  *See*

15   Dkt. 12 at 6-7.  Under current Ninth Circuit precedent, an ALJ must provide "clear and

16   convincing" reasons to reject an uncontradicted opinion from a treating or examining doctor, and

17   "specific and legitimate" reasons to reject a contradicted opinion from such doctor.  *Lester v.*

18   *Chater*, 81 F.3d 821, 830–31 (9th Cir. 1995).  The Ninth Circuit has not yet addressed the 2017

19   regulations in relation to its standards for the review of medical opinions.  It is not, in any event,

20   clear that the Court's consideration of the adequacy of an ALJ's reasoning under the new

21   regulations would differ in any significant respect.  The new regulations still require ALJs to

22   explain their reasoning with specific reference to how they considered the supportability and

23   consistency factors, 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b), and that reasoning must

1    remain legitimate.  *See Thomas S. v. Comm'r of Social Sec.*, No. C20-5083 RAJ, 2020 WL

2    5494904, at *2 (W.D. Wash. Sept. 11, 2020).  The Court must, moreover, continue to consider

3    whether the ALJ's analysis has the support of substantial evidence.  *Ford v. Saul*, 950 F.3d 1141,

4    1154 (9th Cir. 2020).  With these regulations and considerations in mind, the Court proceeds to

5    its analysis of the medical evidence in this case.

6                2.    *Dr. Yang*

7           As mentioned above, Dr. Yang wrote a letter in October 2019 describing Plaintiff's foot

8    conditions and symptoms and indicating that Plaintiff experienced extreme foot pain and

9    swelling that limited her to 15-60 minutes of standing/walking.  AR 932.  The ALJ found that

10   Dr. Yang's opinion did not describe any "objective functional information" and was therefore

11   unpersuasive.  AR 23.

12          The ALJ did not explain why he found Dr. Yang's letter to be subjective: he grouped Dr.

13   Yang's letter with other letters that did not reference any functional limitations, but Dr. Yang's

14   letter referenced a standing/walking limitation.  AR 23, 932.  The Commissioner contends that

15   any error in the ALJ's failure to appreciate Dr. Yang's identification of a functional limitation is

16   harmless because the ALJ properly found Plaintiff's foot condition to be not severe at step two

17   and the step-two findings adequately provide a basis for finding Dr. Yang's opinion to be

18   inconsistent with the record and/or unsupported.  Dkt. 12 at 9-12.  The Court found *supra* that

19   the ALJ erred in finding Plaintiff's foot condition to be not severe, and thus does not find that the

20   ALJ's step-two findings adequately address Dr. Yang's opinion.  On remand, the ALJ shall

21   reassess Dr. Yang's opinion.

22               3.    *Dr. Wolpaw*

23          Dr. Wolpaw examined Plaintiff in April 2018 and wrote a narrative report describing her

ORDER REVERSING THE COMMISSIONER'S
DECISION - 7

symptoms and limitations.  AR 571-77.  Dr. Wolpaw opined, in relevant part, that Plaintiff could stand for a total of 4-5 hours in an eight-hour workday, walk for a total of 4-5 hours in an eight-hour workday, and lift/carry 15 pounds occasionally and 5 pounds frequently.  AR 576.

The ALJ found Dr. Wolpaw's opinion to be unpersuasive because it was inconsistent with and unsupported by objective medical evidence and Plaintiff's demonstrated functioning.  AR 23.  Dr. Wolpaw based his lifting/carrying restrictions in part on Plaintiff's carpal tunnel syndrome, but the ALJ noted that Dr. Wolpaw indicated that further testing and treatment for that condition was needed.[4]  AR 23.  The ALJ also pointed to the many normal findings contained in Dr. Wolpaw's examination report.  *Id*.  The ALJ listed many of Plaintiff's activities as reported in her agency paperwork — specifically activities of daily living, preparing meals, completing household chores, caring for animals, weeding, driving, shopping, handling finances, socializing, traveling, knitting, crocheting, reading, and going outside for 20 minutes per day — and found those activities to be inconsistent with Dr. Wolpaw's opinion.  *Id*.

Plaintiff argues that the ALJ erred in finding that Dr. Wolpaw's opinion was undermined by his comments regarding carpal tunnel syndrome, because the ALJ himself found it to be a severe impairment and the ALJ did not cite any evidence showing that further treatment would have resolved Plaintiff's limitations.  Dkt. 10 at 10.  Furthermore, Plaintiff notes that the ALJ credited the pushing, pulling, handling and fingering limitations identified by Dr. Wolpaw, even though Dr. Wolpaw also attributed those limitations to Plaintiff's carpal tunnel syndrome.  Dkt. 10 at 10 (referencing AR 576).  The Court agrees with Plaintiff that the ALJ did not provide an adequate explanation as to how Dr. Wolpaw's comment regarding Plaintiff's carpal tunnel

---

[4] The ALJ also noted that Dr. Wolpaw indicated that further testing and treatment was needed for Plaintiff's headaches, but Dr. Wolpaw did not attribute any limitations to Plaintiff's headaches.  AR 23, 576.

ORDER REVERSING THE COMMISSIONER'S
DECISION - 8

1   syndrome undermines his conclusions regarding her capabilities at the time of the examination.

2   Dr. Wolpaw's speculation about the potential effect of further testing or treatment is not a

3   legitimate basis for discounting his conclusions.

4          Plaintiff goes on to argue that the ALJ cherry-picked normal findings from Dr. Wolpaw's

5   report, while failing to acknowledge that Dr. Wolpaw's report also lists some abnormal findings,

6   such as limited range of motion, positive straight leg raising, and abnormal sensation in

7   Plaintiff's right hand.  Dkt. 10 at 11 (citing AR 573-75).  The ALJ's failure to explain how he

8   accounted for these findings undermines his finding that Dr. Wolpaw's opinion is inconsistent

9   with the objective medical evidence.  *See, e.g., Gallant v. Heckler*, 753 F.2d 1450, 1455-56 (9th

10  Cir. 1984) (ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring

11  competent evidence in the record that suggests an opposite result.").  Even if the ALJ reasonably

12  focused on objective findings rather than Dr. Wolpaw's observations of Plaintiff's pain, the ALJ

13  nonetheless ignored the abnormal objective findings in concluding that Dr. Wolpaw's opinion

14  was inconsistent with the objective evidence.  This line of reasoning is therefore not legitimate.

15         Lastly, Plaintiff argues that the ALJ failed to cite evidence showing that her activities

16  were completed in a manner inconsistent with Dr. Wolpaw's opinion.  Dkt. 10 at 11-12.

17  Although it could be reasonable to find that some of the activities listed by the ALJ required

18  capabilities in excess of those described in Dr. Wolpaw's opinion, because the Court finds other

19  errors in the ALJ's assessment of Dr. Wolpaw's opinion, the ALJ should reconsider Dr.

20  Wolpaw's opinion on remand.

21                                  <u>CONCLUSION</u>

22         For the reasons set forth above, the Commissioner's final decision is **REVERSED** and

23  this case is **REMANDED** for further administrative proceedings under sentence four of 42

ORDER REVERSING THE COMMISSIONER'S
DECISION - 9

1   U.S.C. § 405(g). On remand, the ALJ should reconsider Plaintiff's foot condition(s) at step two,

2   and reconsider the opinions of Drs. Yang and Wolpaw.

3          Dated this 19th day of July, 2021.

4

5

6                                                    S. KATE VAUGHAN
                                                     United States Magistrate Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

ORDER REVERSING THE COMMISSIONER'S
DECISION - 10